IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CC, A minor, by her parents | ) | |
| and natural guardians, Aretha | ) | |
| Andrews and Chris Andrews, <u>et al.</u>, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 00-0753-CG-M |
| | ) | |
| MONROE COUNTY BOARD OF | ) | |
| EDUCATION, <u>et al.</u>, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

On August 17, 2000, the plaintiffs RSH and CC filed a lawsuit against defendants Monroe

County (Alabama) Board of Education ("Board of Education"), Darenell Payne ("Payne"), and

Mike Floyd ("Floyd"), asserting that the defendants violated their federal rights under Title IX of

the Education Amendments of 1972 (20 U.S.C. § 1681) ("Title IX") and under the due process

and equal protection clause of the Fourteenth Amendment to the United States Constitution (42

U.S.C. § 1983). The plaintiffs also allege state law claims of invasion of privacy, assault and

battery, outrage, negligent and/or wanton and malicious training, supervision and retention, and

false imprisonment. On September 18, 2001, defendants Payne and the Board of Education filed

a motion for summary judgment with supporting brief and evidentiary submissions. (Docs. 48,

49, & 52). This court granted summary judgment for Payne as to the plaintiffs' substantive due

process claim under § 1983 and in his official capacity as to the remaining claims under § 1983

but denied Payne's motion as to the plaintiffs' equal protection claim against Payne in his

individual capacity and their state law claim for outrage. This court held that Payne was not

entitled to qualified immunity from plaintiffs' equal protection claim because his lack of actions

were not within his discretionary authority as principal of the plaintiffs' middle school.   (Doc. 87).  Payne thereafter appealed.

The Court of Appeals for the Eleventh Circuit reversed this court's denial of Payne's motion as to the equal protection claim, holding that Payne, in fact, was acting within his discretionary authority.  However, since this court did not reach the second part of the qualified immunity analysis, whether the plaintiffs have demonstrated that Payne's actions violated clearly established constitutional law, the Eleventh Circuit remanded the matter for further analysis. (Doc. 103).  As a result, this matter is now before the court on limited remand (Doc. 103) from the Eleventh Circuit to apply the second part of the qualified immunity test as provided in Saucier v. Katz, 533 U.S. 194, 201 (2001) to the plaintiffs' claim that the defendant Payne, in his individual capacity, violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution by way of 42 U.S.C. § 1983 through his deliberate indifference to the sexual harassment of the plaintiffs by defendant Floyd who was their teacher.

For the reasons stated below, this court finds that defendant Payne is not entitled to qualified immunity, thus this court holds that the Motion for Summary Judgment is due to be denied as to the specific claim that Payne in his individual capacity violated the plaintiffs' federal rights under the Equal Protection Clause of the Fourteenth Amendment.

## FINDINGS OF FACT

At all times relevant to this lawsuit, defendant Board of Education operated the Monroeville Middle School in Monroeville, Alabama, and defendant Payne was the school principal.  Then eleven-year-old females, plaintiffs RSH and CC, were special education students at the school.  According to plaintiffs' allegations, their teacher, defendant Floyd, touched them in

a sexual manner in separate incidents.  Plaintiffs further allege that defendant Payne, after learning of these sexual encounters, took no action against defendant Floyd. According to the plaintiffs, defendant Payne's inaction allowed defendant Floyd to continue engaging in inappropriate sexual conduct with his students.

After a review of the record, this court finds the following facts to be uncontroverted:

1.  In her deposition, plaintiff RSH testified that defendant Floyd took her into the boys' bathroom, pulled up her dress, and stuck his finger in her.  (Doc. 57, Ex. 11. RSH Dep., pp. 55-6, 155).

2.  Plaintiff RSH stated that, on another occasion, defendant Floyd sat her in his lap and put his arm around her.  (Id. at 56).

3.  Plaintiff RSH also testified that on yet another occasion, she and another student, Belinda, were in the classroom when defendant Floyd put a movie in a VCR, and the three of them watched half of the movie which showed a naked man and woman in bed rubbing on each other.  (Id. at 56-7, 79-81, 136-40).

4.  According to plaintiff RSH, defendant Floyd touched her between her legs and on the breast on more than one occasion.  (Id. at 57-9).

5.  Plaintiff RSH reported defendant Floyd's improper behavior to another teacher, Ms. McKinley.  (Id. at 34).

6.  Plaintiff RSH's mother testified that her daughter told her on three occasions that defendant Floyd had been touching her; after the third time, the mother went to the school to talk and discuss the matter with defendant Payne.  (Doc. 57, Ex. 13, RSH mother's Dep., pp. 33-4). The date of that meeting was January 21, 2000.  (Doc. 57, Ex. 14, Payne Dep., p. 28).

7.  According to defendant Payne, RSH's mother's report of her daughter's allegations was the first time he had heard any sexual allegations against defendant Floyd.  (Id.).

8.  Defendant Payne then held a conference with defendant Floyd, plaintiff RSH, and her mother, during which plaintiff RSH repeated her allegations of defendant Floyd's touching her. (Id. at 28-31).

9.  After RSH's mother told Payne of defendant Floyd's harassment of another student, that student (a boy) was brought into the conference at defendant Payne's invitation.  The student stated that defendant Floyd had been improperly touching him.  (Id. at 30).

10.  After plaintiff RSH and the male student made their allegations, the children and defendant Floyd left, leaving defendant Payne and RSH's mother to talk.  (Id. at 31).  Defendant Payne offered to remove plaintiff RSH from defendant Floyd's classroom, but RSH's mother indicated that she did not want that; rather, she just wanted defendant Floyd to keep his hands off of her daughter - which defendant Payne assured her would be the case.  (Id. at 31, 34).

11.  Defendant Payne then talked with defendant Floyd, who again denied the accusations. (Id. at 35).

12.  According to defendant Payne, both plaintiff RSH and the male student recanted their assertions against defendant Floyd later that same day.  (Doc. 48, Ex. 1, Payne Aff., ¶¶ 16 & 17). Plaintiff RSH and the male student both deny that they recanted their original allegations.  (Doc. 57, Ex. 24, RSH Aff. and Ex. 26, Male Student Aff.).

13.  Subsequently, defendant Payne monitored defendant Floyd's classroom by looking-in and observing it "occasionally," and by watching defendant Floyd's interactions with the students between classes in the hall.  (Id. at 35-39).  Defendant Payne stated that he did not interview any

4

other children.  (Id. at 39).

14.  Defendant Payne admitted that, although he was aware of the relevant school board policy,[1] he did not start an immediate investigation into the matter or notify RSH's mother or the male student's guardians of his findings as required by the policy.  (Id. at 40-3).  Defendant Payne further admitted that he did not provide information of the allegations to the board superintendent because he never conducted a formal investigation.  (Id. at 44-5).

15.  Plaintiff RSH alleges that defendant Floyd did other unspecified "wrong things" to her after the conference held with her mother, defendant Payne, and defendant Floyd.  (Doc. 57, Ex. 11, pp. 131-2).  Plaintiff RSH clarified this testimony in her affidavit, stating therein, that defendant Floyd made her sit on his lap repeatedly and that he put his arm around her, touching her breast in the process.  (Doc. 57, Ex. 24, p. 2).  Plaintiff RSH further stated that defendant Floyd threatened to paddle her if she told her mother again about him touching her.  (Id.).

16.  Marsha Odom was a teacher at Monroeville Middle School during the relevant school year.  (Doc. 57, Ex. 17, Odom Dep., pp. 8-9).  On May 5, 2000, Ms. Odom moved her class to room 10 so that her regular classroom, room 14, could be painted; she did not return to room 14 to teach classes during the remainder of that school year, which was approximately two weeks later.  (Id. at pp. 52-5, 63).

17.  Plaintiff CC testified that one day while she was working on spelling at her desk in her classroom (room 14), defendant Floyd grabbed her out of her desk and took her to Ms.

---

[1]  The Monroeville Middle School sexual harassment policy requires, in relevant part, that (1) upon learning of a complaint, the principal shall start an immediate investigation into the matter, and (2) the completed investigation shall be reviewed by the Superintendent or designee and legal counsel for prompt and appropriate action, if warranted. (See Doc. 57, Ex. 14, Payne Dep., Ex. 11).

Odom's empty classroom (room 10); defendant Floyd then took off CC's clothes and put his finger inside her and touched her breasts.  (Doc. 57, Ex. 12, CC Dep., pp. 56, 70-1, 85-6). Defendant Floyd then told plaintiff CC to put her clothes on and that if she told anyone what had happened, he would put her in jail.  (Id. at 70).

18.  Plaintiff CC tried to tell defendant Payne what had happened right after it happened, but he told her to go to her classroom.  (Id. at pp. 56, 118-9).

19.  Plaintiff CC told her parents about the incident the next day; they took her to the police and reported defendant Floyd's illegal behavior.  (Id. at pp. 93, 11, 116-7).

20.  On May 8, 2000, defendant Payne learned of plaintiff CC's complaints to the police when he and Superintendent Mixon were summoned to the District Attorney's Office.  (Doc. 52, Ex. 1, Payne Aff., ¶ 26).  On that same day, at Superintendent Mixon's directive, defendant Payne sent defendant Floyd home pending an investigation.  Id..  Defendant Floyd has not returned to teach at Monroeville Middle School since that date.  Id. at ¶ 27.

## PROCEDURAL HISTORY

On August 17, 2000, RSH and CC filed a lawsuit against defendants Board of Education, Payne and Floyd in the Southern District of Alabama.  In their amended complaint (Doc. 13), the plaintiffs allege the defendants violated their federal rights under Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681), and the due process and equal protection clause of the Fourteenth Amendment to the United States Constitution (42 U.S.C. § 1983).[2]  The plaintiffs also allege state law claims of invasion of privacy, assault and battery, outrage, negligent and/or

---

[2]  As set forth in the case caption, the plaintiffs asserted their claims against defendant Payne in his official capacity and in his individual capacity. (Doc. 13, ¶ 65) .

wanton and malicious training, supervision and retention, and false imprisonment.  The plaintiffs

seek declaratory and injunctive relief, as well as compensatory and punitive damages.  For their

part, defendants deny these allegations generally and assert a number of defenses, including

various immunity defenses.

On September 18, 2001, defendants Board of Education and Payne filed a motion for

summary judgment with supporting brief and evidentiary submissions.  (Docs. 48, 49, & 52).  The

plaintiffs filed an opposing brief (Doc. 57), to which the defendants submitted a reply.  (Doc. 61).

Defendant Floyd filed a separate motion for partial summary judgment with supporting brief

(Docs. 50 & 51), which the plaintiffs opposed (Doc. 58).  Defendant Floyd also filed a reply to

the plaintiffs' opposition.  (Doc. 62).

On September 28, 2007, this court denied Floyd's motion in its entirety (Doc. 87, p. 36).

As to the other two defendants, this court granted summary judgment for the Board of Education

and Payne as to the plaintiffs' substantive due process claim under § 1983; granted summary

judgement for the Board of Education and Payne its his official capacity for the remaining claims

under § 1983; and granted summary judgment for the Board of Education as to all claims under

state law.  This court denied the Board of Education's motion for summary judgment on the

plaintiffs' Title IX claim and denied Payne's motion as to the plaintiffs' equal protection claim

and their state law claim for outrage.  (Id.).  In particular, this court ruled that Payne was not

entitled to qualified immunity  because his lack of actions were not within his discretionary

authority.  Payne thereafter appealed.

The United States Court of Appeals for the Eleventh Circuit reversed this court's decision

in part holding that Payne did act within his discretionary authority as principal.  However, since

this court did not reach the second part of the qualified immunity analysis, whether the plaintiffs have demonstrated that Payne's actions violated clearly established constitutional law, the Eleventh Circuit remanded the matter to give this court the first opportunity to apply the qualified immunity test as provided in <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). (Doc. 103, p. 8).  Both the plaintiffs and defendant Payne have filed post-remand briefs regarding qualified immunity. (Docs. 108 & 109).

## LEGAL ANALYSIS

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).   "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" <u>Bailey v. Allgas, Inc.</u>, 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting <u>Anderson</u>, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Anderson</u>, at 249-250. (internal citations omitted).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  <u>See</u> <u>Anderson</u>, 477 U.S. at 251-252.  The

moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir.1999).   "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir.1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e)  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party,

there is no genuine issue for trial." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475

U.S. 574 at 587 (1986) (internal quotation and citation omitted).

## B. Qualified Immunity

Qualified immunity protects government officers sued in their individual capacities from

liability for civil damages so long as their conduct "does not violate clearly established statutory

or constitutional rights of which a reasonable person would have known." <u>Vinyard v. Wilson</u>,

311 F.3d 1340, 1346 (11th Cir. 2002)(quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct.

2727, 73 L.Ed. 2d 396 (1982)).  "The purpose of this immunity is to allow government officials to

carry out their discretionary duties without the fear of personal liability or harassing litigation,

protecting from suit all but the plainly incompetent or one who is knowingly violating the federal

law." <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002)(internal quotation marks and citations

omitted).  The inquiry turns on the "objective legal reasonableness of the action, assessed in light

of the legal rules that were clearly established at the time it was taken."[3] <u>Wilson v. Layne</u>, 526

U.S. 603, 614, 119 S.Ct. 1693, 143 L.Ed.2d 818 (1999)(internal quotation marks omitted); <u>see</u>

<u>Hope v. Pelzer</u>, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)("[Q]ualified

immunity operates to ensure that before they are subjected to suit, officers are on notice their

conduct is unlawful." (internal quotation marks omitted)).

To receive qualified immunity, the public official "must first prove that he was acting

---

[3]  Defendant Payne asserts that he did not have the subjective intent to discriminate
against RSH or CC, thus he is entitled to qualified immunity.  (<u>See</u> Doc. 109, pp. 16-7).  Even if
this assertion were true, his "subjective beliefs regarding the circumstances are irrelevant to the
qualified immunity inquiry."  <u>Whittier v. Kobayashi</u>, – F.3d –, 2009 WL 2707174, at *4 (11th
Cir. Aug. 31, 2009)(citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 817-8, 102 S.Ct. 2727, 2737-8 ,
73 L.Ed.2d 396(1982)(discarding the subjective component of the qualified immunity inquiry
and adopting the "objective reasonableness" standard)(other citation omitted)).

within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee, 284 F.3d at 1194 (internal quotation marks omitted).  On appeal, the Eleventh Circuit concluded that Payne  was acting within the scope of his discretionary authority when the alleged sexual misconduct occurred, thus this first prong has been satisfied.  (Doc. 103, p. 7-8).  Therefore, "[o]nce the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Vinyard, 311 F.3d at 1346.

In analyzing whether the plaintiff has satisfied this burden, the Eleventh Circuit instructed this court to follow the procedure from Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed. 2d 272 (2001).  (See Doc. 103, p. 8).  Saucier mandates a two-step sequence for resolving government officials' qualified immunity claims.  Courts were to first determine "whether the plaintiff's allegations, if true, establish[ed] a constitutional violation." Hope, 536 U.S. at 736(citing Saucier, 533 U.S. at 201).  Only if the allegations satisfied this first step did the court then decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct.[4] Saucier, 533 U.S. at 201.  In other words, qualified immunity is applicable unless the officials conduct violated a clearly established constitutional right. Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

After the Eleventh Circuit handed down its decision directing this court to apply the

---

[4]  "Prior to Saucier, the Supreme Court's cases held that 'the better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional law at all.' Saucier made this 'better approach' the only approach." Bash v. Patrick, 608 F.Supp.2d 1285, 1293 n. 4 (M.D.Ala. 2009)(quoting County of Sacramento v. Lewis, 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)).

Saucier procedure, a unanimous Supreme Court in Pearson v. Callahan held that the Saucier

procedure was no longer mandatory.  Instead, the Supreme Court allowed district court and

appellate court judges to "exercise their sound discretion in deciding which of the two prongs of

the qualified immunity analysis should be addressed first in light of the circumstances of the

particular case at hand."  — U.S. —, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009).  Despite this

grant of discretion, this court will now follow the Saucier procedure in determining whether

Payne is entitled to qualified immunity from the plaintiffs' claim that he violated the Equal

Protection Clause of the Fourteenth Amendment of the United States Constitution by way of 42

U.S.C. § 1983.

### 1. Whether the plaintiffs' allegations, if true, established a constitutional violation

It is axiomatic that the Fourteenth Amendment's equal protection clause guarantees RSH

and CC the right to be free from sexual harassment by a teacher.[5]  See Sandra T.E. v. Sperlik, 639

F.Supp.2d 912, at 924 (N.D.Ill. 2009)("If sexual harassment in the workplace violates the Equal

Protection Clause, then certainly the sexual abuse of female students by a teacher violates the

Equal Protection Clause."); A.G. ex rel. K.C. v. Autauga County Bd. of Educ., 506 F.Supp.2d

927, 941 (M.D.Ala. 2007); Morlock v. West Cent. Educ. Dist., 46 F.Supp.2d 892, 918 (D.Minn.

1999)("Courts uniformly recognize that sexual harassment by a state actor [,teacher,] violates the

constitutional rights of the recipient [,student,] under the Equal Protection Clause."); see also

Cross v. Ala. Dep't of Mental Health & Mental Retardation, 49 F.3d 1490, 1507 (11th Cir.

1995)(Employees "have a constitutional right [under the Equal Protection Clause] to be free from

---

[5]  Defendant Payne concedes that "the Fourteenth Amendment may afford the plaintiffs a
right to be free from sexual harassment by teachers in their school..." (Doc. 109, p. 10).

unlawful... sexual harassment in public employment."); <u>Horne v. Russell County Comm'n</u>, 379 F.Supp.2d 1305, 1336 (M.D.Ala. 2005)(same).

Furthermore, a principal can be found to have violated a student's right to be free from sexual harassment under supervisory liability theory.  Supervisory liability under § 1983 "occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between action of the supervising official and the alleged constitutional deprivation."  This causal connection "may be established and supervisory liability imposed where the supervisor... [has a] deliberate indifference to constitutional rights."  <u>Hartley v. Parnell</u>, 193 F.3d 1263, 1269 (11th Cir. 1999); <u>see</u> <u>also</u> <u>Doe v. Taylor Indep. Sch. Dist.</u>, 15 F.3d 443, 452-3 (5th Cir. 1994)("a supervisor can be liable for 'gross negligence' or 'deliberate indifference' to violations of their subordinates."); <u>Stoneking v. Bradford Area Sch. Dist.</u>, 882 F.2d 720, 725 (3d Cir. 1988); <u>Howard v. Bd. of Educ. of Sycamore Cmty. Unit Sch. Dist.</u>, 893 F.Supp. 808, 817-8 (N.D.Ill. 1995)(holding that the plaintiffs asserted an adequate equal protection claim against a principal because the plaintiff asserted the principal was notified of harassment and intentionally took no action to stop the harassment.).

### a. As to Plaintiff RSH

Relying on <u>Davis v. DeKalb County Sch. Dist.</u>, 233 F.3d 1367 (11th Cir. 2000),[6]

---

[6]  Defendant Payne also relies on <u>Hartley v. Parnell</u>, 193 F.3d 1263 (11th Cir. 1999), stating this case is "remarkably similar to the case at bar" and in that case "the Eleventh Circuit ruled that the circumstances there failed to establish any violation of equal protection rights." (Doc. 109, p. 13).  However, unlike <u>Hartley</u>, where the plaintiff did not suffer from any further sexual harassment after the principal was notified of the allegations, both RSH and CC assert that Floyd harassed them after Payne was notified of the alleged harassment of RSH.  (<u>See</u> Doc. 57, Ex. 11, pp. 131-2; Doc. 57, Ex. 24, p. 2).  To the extent that defendant Payne asserts that no sexual assaults occurred after Payne was put on notice of the alleged abuse, this would be a dispute of a material fact, a conflict which is for a jury to decide.  <u>Miranda</u>, 975 F.2d at 1534

defendant Payne argues that he did not act with deliberate indifference after receiving actual

notice of the sexual abuse allegations.[7]  (Doc. 109, pp. 13-5).  However, this court concludes that

the principal's actions in <u>Dekalb County</u> were much more substantial than the actions taken by

defendant Payne in this case.  In <u>Dekalb County</u>, the principal contacted his supervisor about the

report of misconduct after meeting with the student and her guardian; the principal then directed

the school counselor and the social worker to investigate the complaint.  Those two individuals

separately met with the student and with the sole witness identified by the student.  The principal

interviewed the teacher and "discuss[ed] the gravity of the situation."  Following the

investigation, the principal arranged a meeting with the student, her guardian, the social worker,

and the teacher, during which it was determined that any touching was incidental.  Even the

student "could not state [at the meeting] that it was sexual in nature." <u>Id.</u> at 1373.  Nevertheless,

> With [his supervisor's] approval, [the principal] removed [the student] from after-school
> P.E. class with [the teacher].  [The principal] offered to remove [the student] from her
> regular P.E. class with [the teacher], but [the student] wanted to stay in the class.  The
> [student's mother] similarly rejected [the principal's] offer to transfer [her daughter] to
> another school.  [The principal] instructed [the teacher] to avoid all contact with [the
> student] other than class.  [The principal] also forbade [the teacher] from being alone with
> [the student] or any female student.  Finally, [the principal] informed [the student's
> mother] that she could contact [the principal's] supervisor if [the mother] thought anything
> further should be done.
>       [The principal] followed up with [the student] several times throughout the school
> year, but [the student] had no further complaints.  [The principal] also monitored [the
> teacher] for any indiscretions, but he never observed [the teacher] alone with female
> students.  At least three other teachers also testified that they never saw [the teacher] alone
> with female students, and they never witnessed him behave inappropriately around
> students.

---

(11th Cir. 1992)("If reasonable minds could differ on the inferences arising from undisputed
facts, then a court should deny summary judgment.").  As a result, defendant Payne's reliance on
<u>Hartley</u> is misplaced.

[7] This court has found previously that defendant Payne had received actual notice of
Payne's alleged sexual abuse on January 21, 2000.  (<u>See</u> Doc. 87, pp. 13-5).

Id. at 1373-4(footnote omitted).

It is easy to contrast the principal's actions in Dekalb County with defendant Payne's actions in this case.  As set forth above, after plaintiff RSH's mother told defendant Payne of defendant Floyd's improper behavior on January 21, 2000, Payne immediately convened a conference which included Floyd and RSH's mother.  During the course of that conference, plaintiff RSH and another student came in, stated their allegations, and left.  Defendant Floyd left also, leaving defendant Payne and RSH's mother to talk.  Defendant Payne offered to remove plaintiff RSH from defendant's Floyd's classroom, but RSH's mother (inexplicably) indicated that she did not want that action taken; rather, she just wanted defendant Floyd to keep his hands off of her daughter - which defendant Payne assured her would be the case.

Defendant Payne talked with defendant Floyd, who again denied the accusations. Subsequently, defendant Payne "monitored" defendant Floyd's classroom by looking in and observing it as often as he could, but this sporadic and limited observation was his only action. Defendant Payne stated that he did not interview any other children.  Defendant Payne admitted that, although he was aware of the relevant school board policy, he did not comply with it in at least three  ways.  Namely, defendant Payne did not start an immediate investigation into the matter; he did not notify RSH's mother or the guardians of the other student of his findings; and he did not provide information of the allegations to the board superintendent because he never conducted a formal investigation.[8]  In contrast to Dekalb County, defendant Payne did not contact

---

[8]  It is not clear why defendant Payne failed to comply with the policy.  The record evidence, however, indicates that he did not believe the allegations against defendant Floyd made by plaintiff RSH and the male student.  However, the policy does not contain a provision which suspends the duty to investigate and report to the Board if the person taking the complaint does not believe the accusation.  Rather, the policy bestows the responsibility of deciding which

his supervisor; he did not formally investigate the allegations; he did not have any other school personnel or the police investigate the allegations[9]; he did not reconvene the parties after an investigation; he did not instruct defendant Floyd to avoid all contact with plaintiff RSH other than in class; he did not forbid defendant Floyd from being alone with plaintiff RSH or any of the other female students; and he did not tell plaintiff RSH and her mother to contact his supervisor in the event they thought anything further should be done.  These distinctions are substantial and critical, and the court concludes that defendants' reliance on <u>DeKalb County</u> is misplaced.  After due consideration, the court concludes that, in viewing the allegations in a light most favorable to the plaintiffs, a jury could find that defendant Payne was deliberately indifferent to plaintiff RSH's allegations of sexual harassment.

Additionally, relying on <u>D.A.C. v. Thrasher</u>, 655 So.2d 959 (Ala. 1995), defendant Payne asserts that it is unnecessary for this court to consider whether Payne is entitled to qualified immunity because there is not enough sufficient evidence for a jury to find that Payne's failure to abide by the school board's policy was the proximate cause of RSH or CC's injuries.  (Doc. 109, p. 11-3).  Despite this assertion, this court finds that there is enough evidence for a reasonable jury to not only find that Payne was deliberately indifferent to Floyd's alleged sexual harassment but also to conclude that that indifference proximately caused RSH and CC's injuries.  In reaching this conclusion, the court cannot say that plaintiff RSH's evidence is "merely colorable or is not significantly probative."  <u>Anderson</u>, 477 U.S. at 249-50.

### b. As to Plaintiff CC

---

party to believe rests with the Board.

[9]  The record does not explain why defendant Payne did not report plaintiff's RSH's allegations of child sexual abuse to the police.

Plaintiff CC asserts that she would not have been harassed had defendant Payne not been deliberately indifferent to plaintiff RSH's allegations. The court's determination that a jury could find that defendant Payne acted with deliberate indifference as to plaintiff RSH also means that a jury could find that defendant Payne acted with deliberate indifference as to plaintiff CC and that this indifference was a proximate cause of CC's abuse.

**2. Whether the right at issue was "clearly established" at the time of the alleged misconduct**

Since this court has determined that RSH and CC had a constitutional right that would have been violation if the allegations were true, "the next, sequential step is to ask whether the right was clearly established." Saucier, 533 U.S. at 201, 121 S.Ct. 2151. In other words, before qualified immunity is surrendered by Payne, he is entitled to fair and clear warning that the challenged conduct violates federally protected rights. See Hope, 536 U.S. at 741, 122 S.Ct. 2508("The salient question... is whether the state of the law... gave [Payne] *fair warning* that [his] alleged treatment of [RSH and CC] was unconstitutional."); Vinyard, 311 F.3d at 1350.[10]

The Eleventh Circuit identified three categories of fair and clear warning: (1) whether the conduct is so egregious that it violates the constitution on its face, regardless of the absence of authoritative case law; (2) where the conduct does not violate the constitution on its face, but case law exists which can be applied broadly to various factual situations; and (3) where no broad case

---

[10]   Defendant Payne asserts that this court should use the legal standard prior to 2000 in determining whether a right is clearly established. (See Doc. 109 , p. 9). However, the courts in this circuit have applied the legal standard as established after the date of the incident, and this court shall do the same. See e.g., Vinyard, 311 F.3d at 1349-50(the alleged incident occurred in 1998, yet the court applied the legal standard as established in 2001 and 2002 cases); Lassiter v. Alabama A&M University, Bd. of Trustees, 28 F.3d 1146, 1149-50 (11th Cir. 1994)(the alleged incident occurred in 1986, but the court applied the legal standard from a Supreme Court case decided in 1987 and an Eleventh Circuit case decided in 1989).

law applies but there exists precedent which is tied to the facts.  Vinyard, 311 F.3d at 1350-1.

Thus, there need not be a case "on all fours," with materially identical facts, before qualified

immunity will be denied.  "A principle of constitutional law can be 'clearly established' even if

there are 'notable factual distinctions between the precedents relied on and the cases then before

the Court, so long as the prior decision gave reasonable warning that the conduct at issue violated

constitutional rights.'"  Holloman ex rel. v. Harland, 370 F.3d 1252, 1277 (11th Cir.

2004)(quoting United States v. Lanier, 520 U.S. 259, 269, 117 S.Ct. 1219, 1227, 137 L.Ed.2d 432

(1997)); see also Hope, 536 U.S. at 741, 122 S.Ct. 2508("[O]fficials can still be on notice that

their conduct violates law even in novel factual circumstances. Indeed in Lanier, we expressly

rejected a requirement that previous cases be 'fundamentally similar.'").  Although there are no

cases in this circuit before the year 2000 that were factually on point, this court concludes that a

reasonable person in Payne's position could not have believed being deliberately indifferent to

Floyd's conduct was lawful in light of the following clearly established law.

   First, it was clearly established in this circuit that a minor had a substantive due process

right to be free from abuse and that if an official, such as a principal, was deliberately indifferent

to such abuse, such a violation was an infringement of that minor's legal rights.  In fact, the

Eleventh Circuit specifically stated that a principal may be held liable under the Fourteenth

Amendment Substantive Due Process Clause for the sexual abuse of a teacher if that principal is

deliberately indifferent to that abuse.  Hartley, 193 F.3d at 1269("Supervisory liability [under §

1983] occurs... when there is a causal connection between actions of the supervising official and

the alleged constitutional deprivation... [T]he causal connection may be established and

supervisory liability imposed where the supervisor's improper 'custom or policy... result[s] in

18

deliberate indifference to constitutional rights."); see also Taylor By and Through Walker v. Ledbetter, 818 F.2d 791, 794 (11th Cir. 1987)(holding that a foster child can state a 42 U.S.C. § 1983 cause of action under the Fourteenth Amendment against state officials  if the child is abused after a state employee is deliberately indifferent to a known and substantial risk to the child of serious harm); Does v. Covington County Sch. Bd. of Educ., 930 F.Supp. 554, 577 (M.D.Ala. 1996)("The issue [in Covington] is not whether, in general terms, school officials can violate a student's Fourteenth Amendment substantive due process rights by knowingly failing to take steps to eliminate a teacher's sexual harassment of school children or by having inadequate training policies and procedures. They can."); C.B. v. Bobo, 659 So.2d 98, 103-4 (Ala. 1995)(recognized that a student had a substantive due process to not be sexually abused and that if a student can prove that the principal had deliberate indifference toward sexual abuse, then the principal may be held personally liable); see also Youngberg v. Romeo, 457 U.S. 307, 314-325, 102 S.Ct. 2452, 2457-63, 73 L.Ed.2d 28 (1982)(holding that the substantive component of the Fourteenth Amendment's Due Process Clause requires the State to provide involuntarily committed mental patients with such services as are necessary to ensure their "reasonable safety"from themselves and others.); Stoneking, 882 F.2d at 727 cert. denied 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed. 2d 835 (1990)(holding that a principal and assistant principal were not entitled to qualified immunity if they were deliberately indifferent to a teacher's alleged sexual abuse).

Second, the Eleventh Circuit has stated that a plaintiff has "a constitutional right to be free from unlawful sex discrimination and sexual harassment in public employment, and this right is created by the equal protection clause of the Fourteenth Amendment." Cross, 49 F.3d at 1507.

Furthermore, it was clearly established in this circuit by 2000 that a supervisor may be liable

under § 1983 for their subordinate's sexual harassment if a "responsible supervisor" is "on notice

of the need to correct the alleged deprivation, and he fails to do so."   Braddy v. Fla. Dept. of

Labor and Employment Sec., 133 F.3d 797, 801-2 (11th Cir. 1998)(quoting Brown v. Crawford,

906 F.2d 667, 671 (11th Cir. 1990))(internal quotations omitted); see Cross, 49 F.3d at

1503(holding that it was clearly established that a supervisory defendant may be held liable if his

response to knowledge of his subordinates' wrongful sexual harassment is objectively

unreasonable, even if he has a sincere subjective belief that he is acting properly); see also

Franklin v. Gwinnett County Pub. Sch., 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208

(1992)(holding that employment cases provide clearly established law with respect to teacher-on-

student harassment in particular.);[11] Sandra T.E., 639 F.Supp.2d912, at 924("If sexual harassment

in the workplace violates the Equal Protection Clause, then certainly the sexual abuse of female

students by a teacher violates the Equal Protection Clause.").

    Third, it was clearly established at the time of the alleged incident in this case that a

student had a right to be free from sexual harassment by a teacher under Title IX and that a school

district may be held liable in damages if an official of the school district, for example a principal,

---

[11]   In Franklin, a high school student brought a Title IX action for alleged gender-based
discrimination arising from alleged sexual harassment and abuse by a school sports coach and
teacher.  In holding that the implied right of action under title IX supported a claim for monetary
damages, the Supreme Court pointed out that "when a supervisor sexually harasses a subordinate
because of the subordinate's sex, that supervisor 'disciminate[s]' on the basis of sex."  503 U.S.
at 75, 112 S.Ct. 1028 (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64, 106 S.Ct.
2399, 91 L.Ed.2d 49 (1986)).  The Court then stated its belief that "the same rule should apply
when a teacher sexually harasses and abuses a student."  Id..  Thus the Court clearly indicated in
1992 that the same sexual harassment standards apply in both the employment context as issue in
Meritor and in the teacher-on-student sexual harassment at issue in Franklin.

"who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct."  Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 277, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998); see also Franklin, 503 U.S. at 74-5, 112 S.Ct. 1028(establishes that a school district can be held liable in damages under Title IX in cases involving a teacher's sexual harassment of a student.).  At the time of the alleged incident, the Board of Education had a policy against sexual harassment, a policy which required a principal to start an immediate investigation upon receiving a sexual harassment complaint, mandated that superintendent or designee of superintendent and legal counsel review the completed investigation, and established that a written response be provided to the parents of the student and the student.  (See Doc. 57, Ex. 14, Payne Dep., Ex. 11).  Payne admitted that at the time of the incident he was aware of this policy.  (See Id., Payne Dep., pp. 39-43).

In light of the clearly established law described above, this court concludes that a reasonable principal would have known in January of 2000 that being deliberately indifferent to a teacher's sexual harassment of a student would give rise to a violation of that student's equal protection rights. Therefore, defendant Payne is not entitled to qualified immunity because, if the allegations are true, his conduct would  violate clearly established statutory or constitutional rights of which a reasonable person would have known.

## CONCLUSION

For the foregoing reasons, defendant Payne's motion for summary judgment (Doc. 48) is **DENIED** on plaintiffs' § 1983 equal protection claim against Payne in his individual capacity. As a result, the following causes of action remain to be tried:

Against defendant Board:      Title IX

Against defendant Payne:      § 1983/Individual Capacity/Equal Protection

                              Outrage

Against defendant Floyd:      § 1983/Individual Capacity/Substantive Due Process

                              § 1983/Individual Capacity/Equal Protection

                              Invasion of Privacy

                              Assault and Battery

                              Outrage

                              False Imprisonment


**DONE and ORDERED** this 25th day of November, 2009.

                              /s/ Callie V. S. Granade
                              CHIEF UNITED STATES DISTRICT JUDGE