IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| C.C., a minor, by her parents and natural guardians, Aretha Andrews and Chris Andrews, et. al., ) ) ) ) | |
| Plaintiffs, ) | |
| v. ) | CIVIL ACTION NO. 00-753-CG-M |
| MONROE COUNTY BOARD OF EDUCATION, et. al., ) ) ) | |
| Defendants. ) | |

## ORDER

### PROCEDURAL HISTORY

On August 17, 2000, the plaintiffs, RH and CC ("plaintiffs"), filed a lawsuit against defendants, Monroe County, Alabama, Board of Education ("Board of Education"), Darenell Payne ("Payne"), and Mike Floyd ("Floyd"), asserting that the defendants violated their federal rights under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX") and under the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution, made actionable under 42 U.S.C. § 1983. The plaintiffs also allege state law claims of invasion of privacy, assault and battery, outrage, negligent and/or wanton and malicious training, supervision, and retention, as well as false imprisonment.

1

On September 18, 2001, Payne and the Board of Education filed a motion for summary judgment with supporting briefs and evidentiary submissions, asserting defenses of qualified immunity from the § 1983 claims and immunity from state law claims. (Docs. 48, 49, 52). Payne also alleged a defense of state agent immunity. (Doc. 48, p. 2 ). The plaintiffs filed an opposing brief (Doc. 57), to which the Board of Education and Payne filed a reply (Doc. 61). Floyd filed a separate motion for partial summary judgment with a supporting brief (Docs. 50 and 51), which the plaintiffs opposed (Doc. 58). Floyd also filed a reply to plaintiffs' opposition (Doc. 62).

On September 28, 2007, this court denied Floyd's motion in its entirety (Doc. 87, p. 36). As to the Board and Payne (in his official capacity), the court granted summary judgment as to all § 1983 claims; granted summary judgment for Payne in his personal capacity as to the plaintiffs' substantive due process claim under § 1983; and granted summary judgment for the Board as to all state law claims. Id. However, the court denied the Board's summary judgment motion as to the Title IX claim and the state law claim of outrage. Id. The court also denied Payne's summary judgment motion in his personal capacity as to the plaintiffs' § 1983 equal protection claim and state law outrage claim. Id. Specifically, the court held that Payne was not entitled to qualified immunity from plaintiffs' equal protection claim because his lack of action was not within his discretionary authority as principal of plaintiffs' middle school, where a district-wide sexual harassment policy was in place. Id. Payne thereafter appealed.

The Court of Appeals for the Eleventh Circuit reversed this court's denial of Payne's motion as to the § 1983 equal protection claim, finding that Payne's lack of action was, in fact, within his discretionary authority. (Doc. 103). The Eleventh Circuit then remanded the case for analysis of the second part of the qualified immunity test, i.e., to determine whether the plaintiffs demonstrated that Payne's lack of action violated clearly established constitutional law as provided in Saucier v. Katz, 533 U.S. 194, 201 (2001). Id.

On remand, the court once again found that Payne was not entitled to qualified immunity, this time because the plaintiffs introduced evidence sufficient for a jury to reasonably find that Payne, by not acting in accordance with the school's sexual harassment policy, was deliberately indifferent to Floyd's alleged sexual molestation of plaintiffs, giving rise to supervisory liability under § 1983 for a violation of plaintiffs' equal protection rights. (Doc. 110, pp. 12-17). The court also found that the plaintiffs' equal protection rights were "clearly established at the time of the alleged misconduct" in January and May of 2000. Id. at pp. 17-21). Payne appealed a second time.

On this second appeal, the Eleventh Circuit vacated and remanded the court's order in light of the fact that the United States Supreme Court's decision in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), was issued after briefing in this case had closed but before the court entered its summary judgment order. (Doc. 123, p. 8). The Eleventh Circuit instructed this court to reconsider the summary judgment order on the equal protection claim in light of Iqbal. Id.

# THE SUPREME COURT'S HOLDING IN ASHCROFT v. IQBAL

In Iqbal, the Supreme Court ruled that allegations of unconstitutional violations involving discrimination require a showing of discriminatory intent by each defendant and held that "the term 'supervisory liability' is a misnomer." Iqbal at 1949. The case involved a Pakistani Muslim who was arrested on criminal charges in New York City shortly after the September 11, 2001, terrorist attacks and detained by federal officials under harshly restrictive conditions. Id. at 1942. Iqbal sued pursuant to § 1983, alleging that he had been unconstitutionally mistreated because of policies put in place by various government officials, including then-Attorney General John Ashcroft and FBI Director Robert Mueller. Id. In addition to its in-depth discussion of the pleading standards necessary to survive a motion to dismiss, the Iqbal court discussed the substance of what a § 1983 plaintiff must plead in order to overcome a defense of qualified immunity. Id. at 1949-50. Because vicarious liability is inapplicable to § 1983 suits, the court held that a plaintiff must "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," rather than assert that the higher-ranking officials were subject to supervisory liability. Id. at 1948. Thus, when a plaintiff claims that an alleged constitutional violation involved "invidious discrimination," such as a breach of plaintiff's equal protection rights, the plaintiff "must plead and prove that the defendant acted with discriminatory purpose." Id. (citing Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 540-41 (1993)) (other citations omitted).

With this holding in mind, then, the task for this court is to determine whether the plaintiffs have shown facts sufficient for a reasonable jury to conclude that Payne's alleged inaction and failure to investigate claims of sexual abuse against the plaintiffs was due to his purposeful discrimination against female students.[1] In other words, the court must determine whether the alleged failure to investigate was "a course of action [taken] 'because of,' not merely 'in spite of,' [the action's] adverse effects upon an identifiable group," in this case, girls. Id.

## EQUAL PROTECTION -- DISCRIMINATORY INTENT

The core of any equal protection case is a showing of intentional discrimination. Batson v. Kentucky, 476 U.S. 79, 90 (1986). As a general matter, a single discriminatory act against one individual can amount to intentional discrimination for equal protection purposes. Id.; Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 266 n. 14 (1977). An equal protection plaintiff therefore need not prove a discriminatory policy against an entire class; discrimination against the plaintiff because of his or her membership in the class is by itself enough. Adickes v. S. H. Kress & Co., 398 U.S. 144, 152 (1970). "Evidence of a pattern or practice of discrimination, however, is of course strong evidence supporting a plaintiff's claim that she herself has been the victim of

---

[1] The plaintiffs argue that the intentional discrimination at issue in this case was based upon their gender. (Doc. 125, p. 18). Plaintiffs also make the baffling argument in their post-remand sur-reply that the alleged discrimination was based upon their "sex," meaning "the actual act and conduct of 'sex' as a verb." (Doc. 129, p. 6). The court disregards this second argument as nonsensical. There is no precedent that the court is aware of, nor that the plaintiffs have offered, which suggests that discrimination in an equal protection context is capable of being based on the act or conduct of sexual activity.

discrimination." Bohen v. City of East Chicago, Ind., 799 F.2d 1180, 1187 (7th Cir. 1986).

Payne argues in his post-remand brief that the plaintiffs' Amended Complaint fails to allege that he intentionally discriminated against them on the basis of their gender, and points out that the Amended Complaint does not even make mention of his intent. (Doc. 126, p. 5). Payne also argues that the evidence does not establish that he responded to female students' allegations of abuse any differently than that of a male student, JH's, allegation of abuse. (Doc. 126, pp. 6-7). Therefore, Payne argues, under Iqbal, the plaintiffs have failed to state a claim such that they are entitled to relief for an equal protection violation. (Doc. 126, pp. 5-6).

Plaintiffs assert that "it is the substance of statements that is paramount," id., and that "[p]laintiffs' Amended Complaint alleges facts which demonstrate Payne's culpability, including facts regarding Payne's express knowledge of the abuse and his intent to cover up the abuse, which allowed the abuse to continue." (Doc. 125, p. 2). The plaintiffs argue further that Payne has said little about the effect of Iqbal on this case, and instead, is fixated on the fact that the word "intent" does not appear in the Amended Complaint. (Doc. 129, p. 3).

The allegations of the Amended Complaint, and the significant corpus of evidence produced over the course of the discovery period in this case, in the form of deposition testimony and affidavits, tend to show the following: Payne did not remove RH from Floyd's class after he learned of her allegations against Floyd

6

because RH's mother stated that she did not want her daughter removed. (Doc. 58, Vol. 2, Tab 14, Payne depo. p. 31). Payne did not conduct a formal investigation in response to RH's and JH's allegations of sexual molestation, as required by the School Board's sexual harassment policy. (Doc. 58, Vol. 2, Tab 14, Payne depo. pp. 38-39, pp. 44-45). Payne did not conduct a formal investigation in response to KM's allegations of sexual molestation by Floyd. (Doc. 58, Vol. 2, Tab 14, Payne depo., p. 53). Payne did not present a written report regarding the results of the investigation (because no formal investigation took place). (Doc. 58, Tab 14, Payne depo. p 45). Payne did not temporarily suspend Floyd pending a formal investigation into the allegations of sexual molestation. (Doc. 58, Vol. 2, Tab 15, Floyd depo. pp. 152-153). Payne denied to RH's mother that Floyd sexually abused students without conducting a formal investigation. (Doc. 58, Vol. 2, Tab 11, RH Depo., pp. 101-102). Payne urged RH's mother not to pursue the matter ("Ms. Murphy, drop it.") (Doc. 58, Vol. 2, Tab 13, Murphy depo., p. 46). Payne did not inform the superintendent of the RH's, JH's, KM's, or CC's allegations against Floyd. (Doc. 58, Vol. 2, Tab 14, Payne depo. pp. 44-45). Payne did not inform parents in writing of the School Board's response to the complaints against Floyd. Id.

The court finds that this evidence is not sufficient for a reasonable jury to conclude that Payne purposefully discriminated against the plaintiffs because they are female. As Payne points out, one of the four students allegedly molested by Floyd, JH, was male. (Doc. 126, p. 6). Yet there is no allegation, nor any evidence,

that Payne acted any more diligently or decisively with regard to JH's allegation of abuse than with regard to the plaintiffs' allegations. This is an admittedly low bar by which to judge Payne's conduct. But, where Iqbal requires "purpose rather than knowledge" in order to overcome qualified immunity, Iqbal at 1949, the court finds the converse: knowledge, but no purpose. This want of factual allegations as to Payne's purposeful, discriminatory intent against female students based upon their gender compels the court to find that Payne is entitled to qualified immunity with regard to the § 1983 equal protection claim only.

**DEFENDANT'S SUMMARY JUDGMENT ARGUMENT REGARDING PLAINTIFFS' STATE LAW CLAIM OF OUTRAGE**

Payne previously attempted to argue for summary judgment on the merits of the plaintiffs' state law claim of outrage asserted against him in his individual capacity. (Doc. 61, p. 14). However, Payne first presented this argument in his reply brief rather than in his summary judgment motion. (Doc. 87, p. 33). The court concluded that Payne had not properly raised the issue, and denied summary judgment in his favor. Id. at pp. 33-34. Payne now argues that, because the Eleventh Circuit stated that its June 29, 2011, remand was unlimited, he is entitled once again to argue for summary judgment on the merits of the state law outrage claim. (Doc. 126, p. 12).

The court notes that Payne has cited no authority to support the notion that an unlimited remand allows him to resurrect an argument previously rejected by the district court as not properly raised. Furthermore, the Eleventh Circuit's unlimited remand addressed the court's November 25, 2009, summary judgment

8

order, which, in turn, was focused exclusively on the § 1983 equal protection claim and qualified immunity defense. See Doc. 123, p. 8; see also Doc. 110. There is nothing to suggest, post-remand, that the Eleventh Circuit has rendered timely what was once an untimely argument. This court has observed previously the importance of not allowing parties to "treat their initial summary judgment motions as a 'dry run' which they would have an opportunity to redo or supplement—at considerable additional cost to opposing parties and at a considerable drain to scarce judicial resources—via a new Rule 56 motion later on to correct any deficiencies identified by opposing counsel or the court in processing the initial motion." Middlegate Development, LLP v. Beede, 2011 WL 3475474, *11 n.26 (S.D.Ala. Aug. 9, 2011) (citation omitted). Although Payne has not presented an entirely new summary judgment motion, his attempt to revisit the outrage claim where the court previously identified its deficiencies falls into the same category. Courts "do not approve in general the piecemeal consideration of successive motions for summary judgment because parties ought to be held to the requirement that they present their strongest case for summary judgment when the matter is first raised." Siemens Westinghouse Power Corp. v. Dick Corp., 219 F.R.D. 552, 554 (S.D.N.Y. 2004) (citing Allstate Finance Corp. v. Zimmerman, 296 F.2d 797, 799 (5th Cir. 1961) (quotations omitted). Thus, the court, in its discretion, declines to revisit its denial of summary judgment in Payne's favor on the merits of the plaintiffs' state law claims of outrage.

Accordingly, for the reasons enumerated above, the court finds that Payne's motion for summary judgment (Doc. 48) is due to be **GRANTED** with regard to the § 1983 equal protection claim only. Summary judgment is **DENIED** with regard to the merits of plaintiffs' state law claim of outrage against Payne in his individual capacity. As a result, the following causes of action remain to be tried:

| | |
|---|---|
| Against defendant Board: | Title IX and Outrage |
| Against defendant Payne: | Outrage |
| Against defendant Floyd: | § 1983/Individual Capacity/Substantive Due Process |
| | § 1983/Individual Capacity/Equal Protection |
| | Invasion of Privacy |
| | Assault and Battery |
| | Outrage |
| | False Imprisonment |

**DONE** and **ORDERED** this 5th day of December 2011.

/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE